RECEIVED
USDC, WESTERN DISTRICT OF LA.
TONY R. MOORE, CLERK
DATE _____
BY _____

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **SHIELD PACK, LLC** | **CIVIL ACTION NO. 10-0048** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **CDF CORP.** | **MAG. JUDGE KAREN L. HAYES** |

## RULING

Two motions for summary judgment are pending before the Court. The first, Shield Pack LLC's Motion for Summary Judgment of Non-Infringement and Invalidity of U.S. Patent No. 5,788,121 ("Motion for Summary Judgment of Non-Infringement and Invalidity") [Doc. No. 29], has been filed by Plaintiff Shield Pack, LLC ("Shield Pack"). The second, CDF Corporation's Cross Motion for Summary Judgment of No Invalidity of U.S. Patent No. 5,788,121 Based on Anticipation ("Cross Motion for Summary Judgment of No Invalidity") [Doc. No. 33], has been filed by Defendant CDF Corp. ("CDF"). For the following reasons, Shield Pack's Motion for Summary Judgment of Non-Infringement and Invalidity is DENIED, and CDF's Cross Motion for Summary Judgment of No Invalidity is GRANTED.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

Shield Pack and CDF both design, manufacture, and sell intermediate bulk packaging liners. These liners lie flat when empty, but when filled, expand into a self-supporting rectangular parallelepiped,[1] or box shape. The liners are used to transport liquids and powders in boxes.

---

[1] A parallelepiped is "a 6-faced polyhedron all of whose faces are parallelograms lying in pairs of parallel planes." *Parallelepiped Definition*, merriam-webster.com, http://www.merriam-webster.com/dictionary/parallelepiped (last visited Sept. 9, 2010).

On March 10, 2009, Patent No. 5,788,121 ("the '121 patent") [Doc. No. 1-3], titled "Bag for Bag-in-Box and Bag-in-Box," was assigned to CDF. CDF alleges that Shield Pack infringes claims 1, 2, 3, 5, and 8 of the '121 patent.

On May 15, 2009, CDF filed a Complaint in the United States District Court for the District of Massachusetts alleging that Shield Pack infringed the '121 patent. CDF voluntarily dismissed its Complaint in the Massachusetts action, without prejudice, on September 10, 2009.

On January 12, 2010, Shield Pack filed a Complaint in this Court. Shield Pack seeks a declaratory judgment that the '121 patent is invalid, that it has not been infringed by Shield Pack or its customers, and that this is an "exceptional case" within the meaning of 35 U.S.C. § 285. Shield Pack also seeks attorney's fees and an injunction enjoining CDF from asserting or threatening to assert any right arising from the '121 patent against Shield Pack.

On May 20, 2010, Shield Pack filed a Motion for Summary Judgment of Non-Infringement and Invalidity. [Doc. No. 29]. In this motion, Shield Pack argues that the Court should grant it summary judgment on two claims: (1) that Shield Pack's "Quad bags" do not infringe the '121 patent claims because they have curved corner seals instead of "linear" seals and (2) that CDF's '121 patent claims are invalid as anticipated under 35 U.S.C. § 102(b) by the work of Kirin Beer Kabushiki Kaisha ("Kirin"), a Japanese company.

On July 2, 2010, CDF filed a Cross Motion for Summary Judgment of No Invalidity [Doc. No. 33], which also served as its opposition to Shield Pack's Motion for Summary Judgment of Non-Infringement and Invalidity. On July 27, 2010, Shield Pack filed Shield Pack LLC's Opposition to CDF Corporation's Cross-Motion for Summary Judgment of No Invalidity Based on Anticipation and Reply in Support of its Motion for Summary Judgment of Non-Infringement and Invalidity of

U.S. Patent No. 5,788,121. [Doc. No. 42]. On August 10, 2010, CDF filed a Reply Memorandum in Support of CDF Corporation's Cross-Motion for No Invalidity Based on Anticipation. [Doc. No. 43]. This matter is now ripe for ruling.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the court must accept the evidence

of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

B.  Analysis

1.  **The '121 Patent**

The '121 patent was issued to Kabushiki Kaisha Hosokawa Yoko on August 4, 1998, and assigned to CDF on March 10, 2009. Claim 1 of the '121 patent describes and claims:

> A bag used as an inner bag for a bag-in-box . . . comprising:
> a four-side-seal type bag body composed of a pair of opposing flat portions constituting front and back side portions and two side portions connecting front and back side portions at both side ends thereof and respectively having folding lines along which the side portions are folded inward;
> oblique seal portions provided at respective corner portions of the bag body; and
> triangular fin portions formed at respective corner portions of the bag body;
> wherein said flat portions and said side portions are composed of at least two sheets of synthetic resin films that are superposed to each other in a non-bonded state;
> wherein said oblique seal portion is formed such that the two side portions are folded along the folding line, opposing inner surfaces of the bag body are bonded to each other between a first arbitrary point on top seal portion or bottom seal portion to a secondary arbitrary point on a side seal portion so as to obliquely connect said top seal portion or bottom seal portion and the side seal portion, the oblique seal portion being linear;
> wherein said triangular fin portion being defined by the side seal portion, the oblique seal portion and one of the top seal portion and the bottom seal portion;
> and wherein each of said flat portions and said side portions has a shape of a square or a rectangle, and the bag being a cube or a rectangular parallelepiped when filled.

[Doc. No. 1-3, p. 27]. The patent also claims nine (9) variations of the bag for the bag-in-box

(claims 2 through 10), which are dependent on claim 1. The '121 patent is depicted as follows:



### 2. Infringement of the '121 Patent

CDF alleges that Shield Pack infringes the '121 patent. In its Complaint and Motion for Summary Judgment of Non-Infringement and Invalidity, Shield Pack asks the Court to declare that it does not infringe the '121 patent. A patentee must prove infringement by a preponderance of the evidence. *TechSearch, LLC v. Intel Corp.*, 386 F.3d 1360, 1371 (Fed. Cir. 2002). In determining whether the patentee has met its burden, the Court employs a two-step process. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976-79 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). First, the Court construes the terms of the patent claims as a matter of law, and second, the claims are compared to the product accused of infringing the patent. *Id.*

When construing patent claims, terms are given the meaning that a person of ordinary skill in the art at the time of the invention would assign them. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005). Where the ordinary meaning of claim language as understood by one skilled in the art is readily apparent, claim construction may involve "little more than the application

of the widely accepted meaning of commonly understood words." *Id.* at 1314. The context in which the term is used and its use in other claims may also provide guidance. *Id.*

Patent claims must be read in light of the specification, which is highly relevant to the analysis of a term's meaning. *Id.* at 1315. Courts may also rely on the patent's prosecution history and extrinsic evidence, such as expert testimony and dictionaries, although this evidence is less significant than the specification. *Id.* at 1317.

The second step of the infringement analysis, comparison of the claims to the product accused of infringing the patent, is a question of fact. *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998). In this matter, Shield Pack has asked the Court to find that its Quad bags do not infringe the '121 patent as a matter of law. Therefore, the Court can grant Shield Pack's motion only if no reasonable fact finder could find infringement. *See id.*

Infringement may be literal or found under the doctrine of equivalents. *Kahn v. Gen. Motors Corp.*, 135 F.3d 1472, 1476-78 (Fed. Cir. 1998). If an accused product does not satisfy every limitation of a claim either literally or under the doctrine of equivalents, there is no infringement. *Id.* To literally infringe a patent, the accused product must embody every limitation of the patent's claims exactly. *Key Mfg. Group, Inc. v. Microdot, Inc.*, 925 F.2d 1444, 1449 (Fed. Cir. 1991). If the accused product does not literally meet the limitations of a patent claim, it "may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997).

Infringement under the doctrine of equivalents occurs if every limitation of the asserted claim, or its equivalent, is found in the accused product, "where an 'equivalent' differs from the

claimed limitation only insubstantially." *Ethicon*, 149 F.3d at 1315. Whether a component of the accused product "performs substantially the same function . . . in substantially the same way to achieve substantially the same result" as a claim limitation may be relevant to determining whether an equivalent differs only insubstantially from the claim limitation. *Id.*

The doctrine of equivalents must not be applied so that it effectively eliminates any element in its entirety. *Warner-Jenkinson*, 520 U.S. at 29. The court must consider "the totality of the circumstances of each case and determine whether the alleged equivalent can be fairly characterized as an insubstantial change from the claimed subject matter without rendering the pertinent limitation meaningless." *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1359 (Fed. Cir. 2005). However, "any analysis of infringement under the doctrine of equivalents *necessarily* deals with subject matter that is 'beyond,' 'ignored' by, and not included in the literal scope of a claim." *Ethicon*, 149 F.3d at 1317. A claim limitation would be vitiated by the doctrine of equivalents where there is a "clear, substantial difference or difference in kind" between the claim limitation and the accused product, but not where there is only a "subtle difference in degree." *Id.* at 1321.

The doctrine of equivalents is limited by the doctrine of prosecution history estoppel. Under the doctrine of prosecution history estoppel, the doctrine of equivalents may not be applied to allow a patentee to recapture subject matter that was surrendered during prosecution of the patent. *Warner-Jenkinson*, 520 U.S. at 19. "Where an amendment narrows the scope of the claims, and that amendment is adopted for a substantial reason related to patentability," there is "a presumption of surrender for all equivalents that reside in 'the territory between the original claim and the amended claim.'" *Intervet Inc. v. Merial Ltd.*, No. 2009-1568, 2010 WL 3064311, at *7 (Fed. Cir. Aug. 4, 2010) (quoting *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740 (2002)).

"A district court must look to the specifics of the amendment and the rejection that provoked the amendment to determine whether estoppel precludes the particular doctrine of equivalents argument being made." *Id.* at *8.

### a. Whether Shield Pack's Quad bags literally infringe the '121 patent

CDF asserts a patent infringement claim with regard to Shield Pack's multi-layer, gusseted, plastic bags, which Shield Pack refers to as its "Quad bags."[2] Shield Pack argues that its Quad bags do not infringe CDF's '121 patent because their oblique seals curve at the end, instead of "being linear," as required by the '121 patent. The picture of the Quad bags' oblique seals shows that they are straight for approximately twenty-seven (27) of their thirty-one (31) inch length, and curve gently for approximately the last four (4) inches.

Claim 1 of the '121 patent describes how the oblique seal portions are formed, and it includes the clause, "the oblique seal portion being linear." [Doc. No. 1-3, p. 27]. The specification does not define "linear," but describes the oblique seal portions as "having a straight band-shape." [Doc. No. 1-3, p. 16].

Shield Pack argues that the plain meaning of "linear" is "straight," and that this interpretation of the claim is supported by the patent specification which actually uses the word "straight." CDF argues that the term "linear" as used in the '121 patent means "relating to a line that is substantially straight over the majority of its length," and, thus, has a broader meaning than "straight." CDF also

---

[2] There is some disagreement between the parties as to whether Shield Pack also makes Quad bags with oblique seals that are straight along their entire length. Regardless, Shield Pack seeks a judgment of non-infringement for its Quad bags *with* curved-end oblique seals only [Doc. No. 42, p. 10], and the Court refers only to those bags throughout this Ruling.

argues that, during prosecution, the phrase "having a straight band-shape" was changed to "linear" to make the claim *less* restrictive.[3]

The Court construes the term "linear" as used in the '121 patent to mean "straight." The language of claim 1 explaining the oblique seal portions describes them as being formed between two arbitrary points, implying that the "linear" oblique seal is a straight line between those points. Additionally, the "triangular" fin portions of the claimed product are formed on one of their three sides by the oblique seal portions. Triangles are three-sided figures bounded by straight lines. *See Triangle Definition*, merriam-webster.com, http://www.merriam-webster.com/dictionary/triangle (last visited Aug. 27, 2010).

The Court's construction of "linear" is also supported by extrinsic sources. Merriam-Webster's dictionary defines "linear" as "of, relating to, resembling, or having a graph that is a line and especially a straight line: STRAIGHT." *Linear Definition*, merriam-webster.com, http://www.merriam-webster.com/dictionary/linear (last visited Aug. 27, 2010). The first definition of "linear" in the *New Shorter Oxford English Dictionary* is "of or pertaining to a line or lines"; however, the third definition is "arranged or measured along a (straight) line; extended in a line or in length; *spec.* in *Math & Physics*, involving measurement in one dimension only." THE NEW SHORTER OXFORD ENGLISH DICTIONARY 1596 (1993).

The Court finds that a person of ordinary skill in the art would interpret the term "linear" to

---

[3] CDF further argues that Figure 2 of the '121 patent shows that the seals actually bend and curve at the corners when the bag is filled, and, therefore, construing "linear" to mean "perfectly straight over the entire length" would effectively exclude the preferred embodiment of the patent. Although Figure 2 does show somewhat rounded corners when the bag is filled, Figure 1 shows that the oblique seals portions are straight at the corners when lying flat. The Court finds that the figures are not clear enough to assist the Court in construing "linear" as used in the patent claim.

9

mean "straight." Therefore, the Court construes "linear" in the '121 patent claim to mean that the oblique seal portion forms a straight line between the two arbitrary points indicated. Because the oblique seals on Shield Pack's Quad bags do not form a straight line, no reasonable trier of fact could find that they literally infringe the '121 patent.

### b. Whether Shield Pack's Quad bags infringe the '121 patent under the doctrine of equivalents

Shield Pack also contends that its Quad bags do not infringe the '121 patent under the doctrine of equivalents. Shield Pack argues that the prosecution history estoppel doctrine precludes application of the doctrine of equivalents with respect to the "linear" claim limitation. Alternatively, Shield Pack argues that the oblique seal portions described in the '121 patent and the curved-end oblique seal portions found in its Quad bags are not equivalent. The Court will first address Shield Pack's estoppel argument.

During prosecution of the '121 patent, the patentee changed the limitation regarding the shape of the oblique seal portions from "having a straight band-shape" to "being linear," in response to the Examiner's indefiniteness rejection under 35 U.S.C. § 112. Shield Pack argues that removing the word "shape" from the description narrowed the scope of the claim language. CDF argues that removal of the "band-shaped" requirement, which added a breadth element to the line of the seal, actually broadened the scope of the claim.

The Court finds that prosecution history estoppel does not prevent application of the doctrine of equivalents to the "linear" claim limitation.[4] Like the final patent language, the original claim

---

[4] Shield Pack also argues that the doctrine of equivalents cannot be applied to encompass oblique seals that curve at the end because it would allow the '121 patent to encompass subject matter which would be obvious in light of prior art and thus unpatentable. *See Wilson Sporting Goods v. David Geoffrey & Assocs.*, 904 F.2d 677, 683 (Fed. Cir. 1990), *overruled in part on other grounds by Cardinal Chem. Co. v. Morton Int'l*, 508 U.S. 83 (1993). Shield Pack claims

language also provided that the oblique seal portions were formed between two arbitrary points. "Being linear," as construed by the Court to mean that the oblique seal forms a straight line between the two arbitrary points, is no more narrow than "having a straight shape"[5] between two arbitrary points. Although the claim that an element "has" a certain "shape" may sometimes indicate a broader scope, a "straight band-shape" could not be a shape with curves. A straight shape indicates a straight line. Thus, CDF's infringement claim is not precluded by the prosecution history estoppel doctrine. The Court now turns to an examination of the Quad bags under the doctrine of equivalents.

Shield Pack argues that its Quad bags do not infringe the '121 patent under the doctrine of equivalents because there are substantial differences between the Quad bags' curved-end oblique seals and the patent's claimed "linear" oblique seals. However, only the last four (4) inches of the bag's thirty-one (31) inch oblique seals are curved. For the majority of their length, the oblique seals of the Quad bags are linear. Moreover, they curve only a slight degree. Although any curve in the oblique seals places them literally outside the "linear" limitation of the patent, the Quad bags' oblique seals deviate from "linear" only to a very slight degree. As a matter of law, the Court cannot say that this curve constitutes a "clear, substantial difference or a difference in kind" between the "linear" oblique seals claimed in the '121 patent and the Quad bags' curved-end oblique seals. *See Ethicon*, 149 F.3d at 1321. Therefore, there is a genuine issue of material fact regarding equivalence, and the Court DENIES Shield Pack's motion on the issue of non-infringement.

---

that a patent it calls the "Cook patent" makes curved-end oblique seals obvious in light of the "Kirin patents" (which it also claims anticipate and thus invalidate the '121 patent, see section II.B.3, *infra*). However, Shield Pack's conclusory statement that the patents combine to make curved-end oblique seals obvious is not supported, and it is not clear to the Court how curved-end oblique seals would be obvious (and thus unpatentable), yet linear ones would not be. Therefore, the Court is not persuaded by this argument.

[5] Removal of the "band-shape" width requirement for the line from the '121 patent claim language is irrelevant to the shape of the line's length, which is at issue here.

11

### 3. Validity of the '121 Patent

Even though the Court has denied Shield Pack's motion on the issue of non-infringement, Shield Pack could still prevail in this matter if the '121 patent is invalid. Shield Pack argues that the '121 patent is invalid under 35 U.S.C. § 102(b) because it was anticipated by European Patent No. 276994 ("European Kirin patent") [Doc. No. 29-9], titled "Bag-in-Box," and Japanese Patent No. JP 64-9174 ("Japanese Kirin patent") [Doc. Nos. 29-10 and 29-11], titled "Pouch Unit for Bag-in-Box" (collectively, "Kirin patents"). The European Kirin patent was published on December 16, 1992, and claims priority to the Japanese Kirin patent, published on January 18, 1989.

A patent is presumed valid, 35 U.S.C.A. § 282 (West 2010), and "this presumption only can be overcome by clear and convincing evidence to the contrary." *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 424 F.3d 1276, 1281 (Fed. Cir. 2005). Whether prior art anticipates a patent claim is a question of fact. *Trimed, Inc. v. Stryker Corp.*, 608 F.3d 1333, 1343 (Fed. Cir. 2010). However, the anticipation inquiry requires proper claim construction, which is a question of law. *See Trintec Indus. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1294 (Fed. Cir. 2002).

Anticipation requires that a single prior art document disclose every element of a claimed invention, either expressly or inherently. *Trimed, Inc.*, 608 F.3d at 1343. In addition, anticipation requires that the prior art document disclose, either expressly or inherently, all of the claim limitations "arranged or combined in the same way" as they are in the claim. *Therasense, Inc. v. Becton, Dickenson & Co.*, 593 F.3d 1325, 1332 (Fed. Cir. 2010). "[A]nticipation by inherent disclosure is appropriate only when the reference discloses prior art that must *necessarily* include the unstated limitation . . . ." *Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1373 (Fed. Cir. 2002).

The European Kirin patent describes and claims the following:

> A bag-in-box . . . comprising at least two bags having a first bag . . . and a second bag . . . , one . . . of said two bags being positioned inside the other one . . . of said two bags . . . characterised in that at least one of said first . . . and second . . . bags comprises a gusset type bag which comprises;
> a tubular film member having end edges;
> and
> a fuse-bonded portion which is so formed that end portions of said tubular film member are fuse-bonded, said tubular film member comprising;
> a pair of first folding lines . . . defining a front wall . . . therebetween;
> a pair of second folding lines . . . defining a rear wall . . . therebetween; and
> a pair of third folding lines . . . each defining an internally folded gusset portion . . . .

[Doc. No. 29-9, p. 7]. The patent claims also include "fuse-bonding lines . . . obliquely extending" from the folds on the first and second pair of folding lines to the top and bottom to the fuse-bonded end portions. *Id.*

The Japanese Kirin patent describes and claims:

> A pouch unit for a bag-in-box, characterized in forming gusset parts so that distal portions thereof are folded inward while allowed to come into contact with each other or be adjacent to each other in two lateral parts of a pouch element having two open ends; and bonding and sealing each piece of the gusset parts and pieces of the pouch element in opposition to the pieces of the gusset parts along a slanted line that connects a center position of the open ends of the pouch element and a specific position of connecting parts for connecting the pouch element and the gusset parts, with the specific position being disposed further inward from the center position.

[Doc No. 29-11, p. 3]. Shield Pack argues that the Kirin patents anticipate claims 1, 2, 3, 5, and 8 of the '121 patent. CDF argues that the Kirin patents do not anticipate the '121 patent claims because they fail to disclose (1) a "four-side-seal type bag body"; (2) "side seal portion[s]"; (3) "triangular fin portions being defined by the side seal portion[s]"; and (4) "flat portions . . . composed of at least two sheets . . . superposed to each other in a non-bonded state," as required by claim 1 of the patent. [Doc. No. 33-1, p. 19].

13

According to CDF, Shield Pack incorrectly construed the terms "four-side-seal type bag body"; "seal portion"; and "superposed to each other in a non-bonded state."[6] If the terms are construed the way CDF argues, the '121 patent was not anticipated.

      **a.**    **Construction of the terms "four-side-seal type bag body" and "side seal portion" as used in the '121 patent**

The parties do not dispute that the sides of the bags described in the Kirin patents are formed by folds instead of seals.[7] Instead, Shield Pack argues that the '121 patent claims must be construed to encompass a bag that can have sides formed by either seals or folds. If so, the Kirin patents disclose the "four-side-seal type bag body" and "side seal portion" limitations of the '121 patent. CDF, conversely, insists that a proper construction of the '121 patent claims requires the sides of the bags to be formed by seals, not folds. Shield Pack argues that the terms "four-side-seal type bag body" and "side seal portion" in the '121 patent claim are not limited to bags formed by side seals because they include the broadening words "type" and "portion" following "seal."

Shield Pack argues that inclusion of the term "portion" after "side seal" leaves the term "side seal portion" open to definition by reference to the specification. [Doc. No. 42, p. 12]. The '121 patent specification provides:

> A bonding operation for forming the top seal portions . . . , bottom seal portions . . . and side seal portions . . . is usually performed by using a heat sealing method. In this regard, by bending or folding a film to be used for forming the bag body, a part of the top seal portions . . . , bottom seal portions . . . and side seal portions . . . can be omitted.

[Doc. No. 1-3, p. 20]. Shield Pack argues that this language can only be interpreted to mean that

---

[6] The parties agree that there is no question of fact that precludes summary judgment as to whether the Kirin patents anticipate any claim of the '121 patent. [Doc. No. 33-1, p. 5].

[7] Professor Robert M. Kimmel, Shield Pack's retained expert, stated in his deposition that the plain meaning of "seal" is "two things bonded together." [Doc. No. 33-9, Kimmel Dep., p. 26].

bending or folding are alternatives to sealing in forming the "side seal portions."

CDF argues that the claims of the '121 patent are limited to bags made with side seals only. CDF asserts that "seal portion" is properly construed as "an area of the bag in which a fluid tight bond is used to join two different parts of the bag together," not an area of the bag joining two parts by seals, bends, or folds. [Doc. No. 33-1, p. 20, emphasis omitted]. CDF argues that the language in the specification discussing ways that parts of "side seal portions" can be omitted describes methods of forming a bag that would not be covered by the '121 patent because the '121 patent requires that the bag have "side seal portions."

The language in the specification is awkward, but the Court agrees with CDF's claim construction. Claim 1 of the '121 patent requires that the bags it describes have "side seal portions." However, according to the specification, the "seal portions," including "side seal portions," are "omitted" when the bag body is formed by bending or folding. This implies that when bending or folding is used to form the bag body, the connecting portions of the bag body must be something other than "seal portions."[8] If the drafter of this language intended it to allow the '121 patent to encompass different methods of forming the bag's connecting portions, he thwarted himself when he included the term "seal portions" in the claim.

Shield Pack also argues that the term "four-side-seal type bag body" refers to a bag "similar to" one that has four side seals connecting its front, back, and side portions, which includes bags that have bends or folds connecting those portions. [Doc. No. 42, p. 16]. Shield Pack supports this argument by pointing out that the claim could have omitted the word "type" and simply stated "four-

---

[8] Perhaps they would be "bend portions" or "fold portions." The use of the full term "seal portions" instead of simply "seals" in this sentence of the specification supports CDF's argument that it means an area of the bag with a seal, not an area of the bag with a seal, a bend, or a fold.

side-seal bag body," which would have been narrower. However, the claim could also have stated "four-side type bag body," which would have been broader. In this light, the claim's limitation to a "four-side-seal type bag body" supports CDF's argument that the claim requires the bag to have four side seals. The Court construes "type" as used here to limit the claim to a category of bag bodies having the characteristic of four side seals.

Under the Court's construction of the '121 patent, no reasonable fact finder could find that the Kirin patents, which do not disclose side seals, disclose every limitation[9] of the '121 patent claims.[10] Therefore, the Court DENIES Shield Pack's Motion for Summary Judgment of Non-Infringement and Invalidity and GRANTS CDF's Cross Motion for Summary Judgment of No Invalidity.

### III. CONCLUSION

For the foregoing reasons, Shield Pack's Motion for Summary Judgment of Non-Infringement and Invalidity is DENIED, and CDF's Cross Motion for Summary Judgment of No

---

[9] Specifically, under this construction, the claim limitations requiring "a four-side-seal type bag body"; "oblique seal portion[s] . . . formed such that . . . opposing inner surfaces of the bag body are bonded . . . between a first arbitrary point on top seal portion or bottom seal portion to a second arbitrary point on a side seal portion"; and "triangular fin portion[s] being defined by the side seal portion" [Doc. No. 1-3, p. 27] could not be disclosed in the Kirin patents.

[10] Because the Court finds no reasonable fact finder could find that the Kirin patents anticipate claim 1 of the '121 patent because it does not disclose "side seal portions" or a "four-side-seal type bag body," it is unnecessary for the Court to reach CDF's second argument that the '121 patent is not anticipated by the Kirin patents because it does not disclose flat and side portions of the bag composed of "at least two sheets of synthetic resin films that are superposed to each other in a non-bonded state." Also, because no reasonable fact finder could find that the Kirin patents anticipate claim 1 of the '121 patent, no reasonable fact finder could find that they anticipate claims 2 through 10 of the '121 patent, which are dependent on claim 1.

Invalidity is GRANTED. This case remains pending for trial.

MONROE, LOUISIANA, this __13__ day of September, 2010.

                                            ROBERT G. JAMES
                                            UNITED STATES DISTRICT JUDGE